Joseph Kaszab, Plaintiff in Error, v. Metropolitan State Bank, Defendant in Error.

Gen. No. 35,195.

Opin-
ion filed January 20, 1932. Rehearing denied February 1, 1932.

NELSON, BURTON & QUINDRY, for plaintiff in error.

FRANK A. RAMSEY, for defendant in error; ERNEST
SAUNDERS and JOHN B. BRENZA, of counsel.

MR. JUSTICE WILSON delivered the opinion of the
court.

Plaintiff, Joseph Kaszab, brought his action against
the Metropolitan State Bank, charging the defendant
with having converted to its own use a number of
checks of the value of $23,783.26 and with failure to
pay plaintiff on demand for said checks to the damage
of the plaintiff in the sum of $30,000. To this action
the defendant filed two special pleas.

The first plea sets out and alleges that on Feb-
ruary 11, 1927, and prior to the commencement of the
suit at bar, plaintiff began and instituted a certain
action at law in assumpsit in the circuit court of Cook
county, in which action the said Joseph Kaszab, plain-
tiff in this case, was also plaintiff there and Greene-
baum Sons Bank and Trust Company was defendant;
that a summons issued out of said court directed to the
defendant, Greenebaum Sons Bank & Trust Company,
a corporation, to which defendant entered its appear-
ance and filed its answer therein; that the plaintiff,
under oath, filed his affidavit of merits in support of
his declaration in said cause, in which he stated and
charged that the defendant, Greenebaum Sons Bank &
Trust Company, was a corporation organized under
the laws of the State of Illinois and engaged in the
banking business in Chicago, and that the plaintiff
maintained a certain deposit account with said bank-
ing company, which was known as a commercial check-

ing account; that during the period from March 24, 1925, to and including October 4, 1926, plaintiff signed certain drafts or checks addressed to the defendant as drawee, payable respectively to the order of various persons therein named in various sums, but that the said payee so named in said checks never received the same nor indorsed them; that the signatures of the said respective payees, as indorsers of said checks, were not made by said respective payees, but were forged by other persons; that the defendant on certain dates wrongfully paid the said sums of money to the person or persons not entitled thereto and wrongfully charged the account of plaintiff with said respective sums; sets out checks so wrongfully paid out on said forged indorsements, together with the serial numbers of said checks; charges that the drafts and checks set out in the affidavit of the plaintiff in said cause are the same drafts and checks set forth and described in the declaration in the present pending cause; charges that said action was reached for trial and duly heard and determined in the circuit court and the jury was instructed by the court to find the issues in favor of the plaintiff and assess the plaintiff's damages; that the jury did so find for the plaintiff and assessed the plaintiff's damages, and judgment was entered upon the verdict; that thereupon the defendant entered its exceptions to said judgment and prayed an appeal to the Appellate Court in and for the First District of the State of Illinois and filed its bond in said cause on appeal; charges that the defendant, Greenebaum Sons Bank & Trust Company was solvent; charges that on the appeal, judgment was entered in the Appellate Court for the First District of Illinois in said cause, reversing and setting aside said judgment and entering judgment in favor of the defendant; charges that by stipulation the remanding clause in the judgment order of the Appellate Court was stricken from the

record and the judgment was made final in the Appellate Court. A petition for a writ of certiorari in the Supreme Court was denied.

The second special plea is very similar to the first, with the additional allegation that Greenebaum Sons Bank and Trust Company notified the defendant, Metropolitan State Bank, that it would look to it for reimbursement in the event it should be held liable in the action pending against it in which Joseph Kaszab was plaintiff and Greenebaum Sons Bank & Trust Company was defendant. This was based upon the ground that the Metropolitan State Bank had guaranteed the indorsement and it also agreed in writing to indemnify the Greenebaum Sons Bank & Trust Company against any loss arising out of the transaction by reason of the false or forged indorsements on the checks or drafts in question. It is also alleged that the Metropolitan State Bank, defendant, joined with the said Greenebaum Sons Bank & Trust Company in the defense of said cause. Demurrers to these pleas were overruled and plaintiff prayed an appeal to this court.

The first plea in effect is treated as one charging that the plaintiff by suing Greenebaum Sons Bank & Trust Company elected to declare its remedy as one in assumpsit against its depository bank and, having prosecuted that case to a final conclusion, it was precluded after an adverse decision from starting and maintaining its present action against the defendant, Metropolitan State Bank, in tort for wrongfully converting the checks of the plaintiff.

The second plea is treated as one raising the issue of *res adjudicata,* or if not *res adjudicata* a plea of estoppel by verdict.

The original proceeding is entitled, *Joseph Kaszab v. Greenebaum Sons Bank & Trust Company,* Gen. No. 33,071, and reported in vol. 252 Ill. App. 107.

The demurrer to the pleas admits that the action is predicated upon the same checks and growing out of the same circumstances and transactions. These checks were made out by the plaintiff and handed to one Tomsovic, an employee, and the forged indorsement of the payee placed by him on the check. They were drawn on Greenebaum Sons Bank & Trust Company, deposited in the defendant bank by Tomsovic, and paid by the drawee, the Greenebaum Sons Bank & Trust Company, in the regular course of banking business after having passed through the clearing house.

The issue raised by the first plea is simple, namely, whether the plaintiff having elected to sue the drawee bank in the first instance and prosecuted the action to a final conclusion, and, failing to recover, can now sue the defendant bank through which the checks passed during the course of the various transactions. Plaintiff's position is that the actions are against different persons and are consistent and concurrent; that only a satisfaction of the claim in one case would constitute a bar to the other and that therefore the doctrine of election does not apply.

Defendant on the other hand insists that the remedies are inconsistent in that, in the action against the Greenebaum Sons Bank & Trust Company, plaintiff's position was based on the theory that the money paid out on the forged checks was the money of Greenebaum's Bank and not that of the plaintiff and that, consequently, the bank still held plaintiff's money for plaintiff's use; that, therefore, this position was inconsistent with the position taken against the Metropolitan State Bank in that this action was in tort and based on the proposition that the defendant, Metropolitan State Bank, had wrongfully paid out the money of the plaintiff and that it was, therefore, a ratification of the payment by Greenebaum of the funds in controversy

to the present defendant. In other words, that the plaintiff, by his action against Greenebaum, refused to ratify the act of Greenebaum in paying the Metropolitan State Bank, but, by his action against the Metropolitan State Bank he thereby took an inconsistent position in that he must necessarily ratify the action of Greenebaum Sons Bank & Trust Company in paying the defendant.

"Election of Remedies" is the choice or adoption of one of two or more existing remedies, the use of one of which would preclude a resort to the others. In order to make a case of the application for this elective principle, the party having the right to the choice and selection must actually have at command two inconsistent remedies. The doctrine of election is based on the theory that where there are inconsistent rights or remedies, of which a party may avail himself, a choice of one is held to be an election not to pursue the other. If, however, the remedies are co-existing and consistent, the doctrine of election does not apply. Courts of law are open to litigants to furnish redress for injuries or damages sustained, but it places upon the litigant the duty of electing the course which he desires to pursue. If the actions are inconsistent, the courts place the responsibility of election on the one who seeks its aid and assistance. *Glezos v. Glezos,* 346 Ill. 96.

Counsel for plaintiff cite in support of their position *Rauch v. Ft. Dearborn Nat. Bank,* 223 Ill. 507. An examination of the facts in that case, however, discloses that the Fort Dearborn National Bank filed its bill of interpleader in the superior court of Cook county charging that Rauch & Co., one of the defendants, had in its employ a certain Bugenhagen who forged its indorsements to certain checks upon other banks made parties defendant; that these checks were cashed by one Rein and deposited with the plaintiff

bank and credited to Rein's account and afterwards honored by the defendant banks, made parties defendant to that suit. The bill filed was a bill of interpleader and attempted to make all persons concerned parties defendant to the bill. The Supreme Court of this State in that case held that a court of equity was without power to compel a person to relinquish his claim against one liable on a contract and require him to proceed against another in tort. The defendant Rauch in that case had the right to elect his own course of procedure and his own remedy.

Considerable reliance is also placed by plaintiff on the case of *Bartlett v. First Nat. Bank of Chicago,* 156 Ill. App. 415. From the facts in that case it appears that the plaintiff sued the Reddick Bank, probably on the ground that the Reddick Bank was liable by reason of having warranted the genuineness of the payee's signature by its indorsement over to the drawee. This suit was dismissed, however, before Bartlett brought his action against the First National Bank. The court in that opinion held that both the drawee and the Reddick Bank would be liable independently on its warranty and that no election of remedies could arise. No authorities are quoted and there is no discussion of this point. It probably was based on the fact that the suit did not proceed to final determination, but was dismissed before the second action was started. On appeal to the Supreme Court, the case of *Bartlett v. First Nat. Bank of Chicago* was affirmed and reported in 247 Ill. 490. The question does not appear to have been raised in the Supreme Court nor discussed in its opinion.

In the case of *Fowler v. Bowery Savings Bank,* 113 N. Y. 450, it appears that John and Elizabeth White opened a joint account as depositors with the defendant bank; both died within a short time and their executors were appointed. Fowler, the executive of

Elizabeth White's estate, sued Flynn, the executor of John White's estate, who had withdrawn the money from the bank and had recovered judgment, but was unable to collect. Fowler, thereupon, sued the defendant bank. The court held that the plaintiff had an election of remedies against the executor of John White's estate, for money had and received, or against the bank to recover the deposit, but that he was not entitled to both and by electing one he lost the other. The court, in its opinion, said:

"The relation between a savings bank and a depositor therein is that of debtor and creditor, and the defendant, therefore, became a debtor for the sum deposited with it by John White. (*People v. Mechanics and Traders' Savgs. Institution,* 92 N. Y. 7.) After his demand of the deposit, and the payment of the money to Flynn, there were two remedies open to the plaintiff: He could sue the defendant as a debtor for the deposit and recover the amount thereof from it, or he could bring an action for money had and received to and for his use against Flynn, and recover it from him. But he was not entitled to both remedies at the same time, or in succession; and by electing the one he would lose the other. By electing to sue the bank he would repudiate its payment to Flynn, and his claim would be that the debt had not, in fact, been paid. By suing Flynn he would adopt and ratify the act of the bank in making payment to him, and his claim would be that the money due to him had, in fact, been paid to Flynn, and that Flynn had received it to and for his use. Such adoption and ratification of the payment would legalize the payment as between him and the bank, and thus discharge the bank. He could not occupy the position at the same time of claiming that the bank had paid his money to Flynn and yet that the bank was still his debtor. . . . So here, the law will not tolerate the absurdity of holding that

the plaintiff could sue Flynn on the ground that he had received money from the bank belonging to him, and at the same time sue the bank on the ground that it still remained his debtor, and that the money paid to Flynn was not his money and did not operate as payment."

A case much in point is that of *Jones v. First Nat. Bank of Lincoln* (Neb.), 90 N. W. 912. In that case from the facts it appears that the plaintiff treated the check as valid and prosecuted his suit against the bank to a final determination. The opinion was by Judge Pound and we quote it at length:

"The plaintiff alleged in his petition that the bank paid out the money upon a false and counterfeit check, which was altered, false, and forged upon its face, and offered to prove that a paying teller, in the proper exercise of his duty, would have seen the alteration. But we need not consider the effect of these allegations, nor the admissibility of the evidence offered, for the reason that plaintiff had clearly cut himself off from any such cause of action before this suit was tried. In *Jones v. Stewart,* already referred to, he had sued Stewart, alleging that the latter received the money on that very check, and that he had thereby lost his deposit. He prosecuted that cause to final judgment. Having elected to treat the check as valid, and the payment to Stewart as authorized thereby, he cannot afterwards assert the contrary position. Either Stewart had his money, or the bank had it. Both could not have it. If the bank had the money, Stewart had the bank's money, and he was not liable to Jones, but to the bank. If Stewart had Jones' money, it was because the bank had paid it out on Jones' check, and the bank was no longer holden for the deposit. *Fowler v. Bank,* 113 N. Y. 450, 21 N. E. 172, 4 L. R. A. 145, 10 Am. St. Rep. 479. Looking at this suit as one based upon payment of the altered check, the two are

entirely inconsistent." To the same effect see *Figuers v. Fly,* 137 Tenn. 358; *Crane v. Atlanta & Lowry Nat. Bank,* 40 Ga. App. 83, 149 S. E. 58; *Crook v. First Nat. Bank of Baraboo,* 83 Wis. 31.

From these cases the doctrine appears to be fairly well settled that where one sues a drawee bank on a check paid by it on a forged indorsement, he takes the position that the bank still has his money and that the money paid out by the bank was the bank's money and, therefore, not binding as to him. Where one sues another who has indorsed such a check over to the drawee bank, he necessarily takes the position that the money paid by the drawee bank was wrongfully paid and therefore wrongfully detained. The positions are mutually contradictory.

By electing to hold the drawee bank, one whose name has been forged to a check is placed in the position of refusing to ratify the payment by the bank on the forged instrument. No case in the Supreme Court of this State has been directly passed upon and the opinion in *Bartlett v. First Nat. Bank of Chicago,* 156 Ill. App. 415, cited by plaintiff, is not controlling. The Supreme Court of this State, however, inferentially has recognized the distinction between the liability of the drawee bank and an indorser guaranteeing prior indorsements.

In the case of *Independent Oil Men's Ass'n v. Fort Dearborn Nat. Bank,* 311 Ill. 278, the court in its opinion says:

"Defendant in error might have brought an action of trover against plaintiff in error for unlawful conversion of its property, but it chose to waive the tort and to bring its action in assumpsit for money had and received for its use. That it had a right to do this is well established by the great weight of authority. (*Rauch v. Fort Dearborn Nat. Bank,* 223 Ill. 507; *Hamlin's Wizard Oil Co. v. United States Express Co.,*

265 id. 156; *Talbot v. Bank of Rochester,* 1 Hill, 295; *Buckley v. Second Nat. Bank,* 35 N. J. L. 400; *Farmer v. People's Bank,* 100 Tenn. 187, 47 S. W. 234; *Crisp v. State Bank,* 32 N. D. 263, 155 N. W. 78.) Defendant in error ratifies the collection of the check for it, and by this act ratifies the assumed payment of the check. Both the drawer and the drawee of the check are released from paying it over again, because the payee, by ratifying the payment, is estopped from making a claim against either. *United States Portland Cement Co. v. United States Nat. Bank* (Colo.), 157 Pac. 202, L. R. A. 1917A, 145, Annotation, id. 148.'' It may well be argued that the Supreme Court in this opinion has inferentially established the proposition that the claims are inconsistent and that a party having availed himself of one is estopped from asserting the other.

We are of the opinion that the facts set out in the first plea of the defendant, namely, that by his election to sue the drawee bank and prosecuting his suit to a final conclusion, the plaintiff is precluded from afterwards suing the defendant in this case, set out a good cause of action and the demurrer thereto was properly overruled.

In view of the position taken by this court as to the first plea, it is unnecessary to consider the second.

For the reasons stated in this opinion the judgment of 'the superior court is affirmed.

*Judgment affirmed.*

Hebel, P. J., and Friend, J., concur.