**P.M.F. SERVICES, INC. and Richard Reuth, Plaintiffs,**

v.

**Daniel J. GRADY, individually etc., et al., Defendants.**

**No. 87 C 9113.**

United States District Court, N.D. Illinois, E.D.

Oct. 5, 1988.

142

See also N.D.Ill., 687 F.Supp. 398.

Michael R. Collins, Harold E. Collins & Associates, Ltd., Chicago, Ill., for plaintiffs.

Thomas J. Swabowski, Barclay, Damisch & Sinson, Ltd., Chicago, Ill., for Grady.

Denise M. Higgins, Burke & Burke, Ltd., Chicago, Ill., for Mount Greenwood Bank.

Claudia J. Lovelette, Angela S. Curran, Burke, Bosselman & Weaver, Chicago, Ill., for Northern Trust.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

P.M.F. Services, Inc. ("P.M.F.") has sued (1) its ex-employee Daniel J. Grady ("Grady") for fraud and (2) two banks for conversion and breach of warranty. One of the banks, Northern Trust Company ("Northern"), has moved for summary judgment under Fed.R.Civ.P. ("Rule") 56 on Amended Complaint Count IV (the only count directed against Northern). For the reasons stated in this memorandum opinion and order, Count IV is dismissed and Northern is dismissed as a defendant.

*Facts* [1]

In April 1986 P.M.F. employee Grady opened an account at Mount Greenwood Bank ("Mount Greenwood") under the name "PMF Services." From then until August 1987 he stole checks payable to P.M.F., forged P.M.F.'s endorsement and deposited the checks in his Mount Greenwood account.

Thirteen of the checks Grady forged (aggregating $17,808.01) were drawn on the account of Niedert Fleet Management Corp. ("Niedert"), a customer of Northern. After those checks were deposited at Mount Greenwood, they were presented to Northern through ordinary banking channels. Northern paid the checks without verifying the third party endorsements.

Upon discovering Grady's forgeries, P.M.F. filed this action suing him for fraud,[2] suing Mount Greenwood for conversion and breach of transfer and presentment warranties and suing Northern for conversion of the 13 Niedert checks. None of the

---

1. Familiar Rule 56 principles impose on the movant the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). For that purpose this Court is called on to draw all "reasonable inferences, not every conceivable inference" in the light most favorable to the nonmovant—in this case P.M.F. (*DeValk Lincoln Mer-*

*cury, Inc. v. Ford Motor Co.,* 811 F.2d 326, 329 (7th Cir.1987). In this instance, however, the facts are not in dispute and no inference drawing is required.

2. Grady has pleaded guilty to federal criminal charges in connection with this matter.

claims has been fully disposed of before now.

### General Banking Theory

P.M.F.'s conversion suit against Northern is based on Uniform Commercial Code ("UCC") § 3–419(1)(c), Ill.Rev.Stat. ch. 26, ¶ 3–419(1)(c):[3]

(1) An instrument is converted when ...

(c) it is paid on a forged endorsement.

Northern's contention that the endorsements are not "forged" in that sense requires an explanation of general bank collection theory.

Under the dominant theory of bank collection that antedated (and was then codified by) the UCC, the relationship between a payor bank and its customer is one of debtor and creditor: The bank is indebted to the customer and promises to debit the customer's account only at its direction. For that reason the payor bank has no authority to charge a check bearing a forged endorsement to its customer's account (a rule codified in Section 4–401(1)).

If the payor bank does debit the customer's account, the customer can therefore compel that bank to recredit the sum—conceptually the full amount of the check always remains in the account of the drawer. Thus, the theory continues, when a collecting bank (such as Mount Greenwood) presents a check bearing a forged endorsement to the payor bank-drawee (such as Northern), the drawee does not turn over proceeds of its customer's account. Instead it is considered to have paid the check with its own funds.

When a payee sues a *collecting* bank for conversion, the payee seeks recovery of the *specific proceeds of the check*. But if—under the general theory just explained—those proceeds are viewed as having remained in the drawer's account, no conversion can have taken place (for, as already explained, the money turned over to the collecting bank was that of the payor bank rather than of that bank's customer).

That dilemma can be avoided if the payee "ratifies" the collection of the proceeds from the payor bank, thus enabling the payee to sue the collecting bank for misusing the payee's money rather than someone else's (the payor bank's). And that concept has given rise to the doctrine that by the very act of bringing suit against the collecting bank for conversion, the payee does ratify the collection "and transmutes the remittance of funds by the payor bank into an authorized act for which it may debit its customer's account" (*Cooper v. Union Bank*, 9 Cal.3d 371, 107 Cal.Rptr. 1, 6, 507 P.2d 609, 614 (1973)).

Northern urges this Court to apply that ratification theory. Specifically, Northern Mem. 3–4 argues that when P.M.F. brought suit against Mount Greenwood for conversion, it ratified the collection of the proceeds of the 13 Niedert checks. Consequently, Northern says, P.M.F. is estopped from suing either the drawer (Niedert) or the drawee (Northern). P.M.F. disputes the applicability of such a ratification theory.

As an initial matter, the familiar principles of *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) require that in this diversity action the Court apply Illinois choice of law rules. But where as here the parties fail to raise a choice-of-law issue and treat one state's law as controlling, the court treats that as a stipulation as to the applicable law (*National Association of Sporting Goods Wholesalers, Inc. v. F.T.L. Marketing Corp.*, 779 F.2d 1281, 1284–85 (7th Cir.1985)). This opinion therefore turns to the substantive law of Illinois.[4]

For whatever reason, the ratification issue has been addressed only infrequently in courts anywhere,[5] and Illinois is no ex-

---

**3.** All further references to UCC provisions will take the form "Section—" (the Illinois version in Ill.Rev.Stat. ch. 26 follows the UCC numbering).

**4.** It is worth noting (especially given the small volume of case law anywhere) that no one has

suggested any different rule might obtain under the other possible candidate, Indiana law.

**5.** That paucity of case law is not so mysterious when it is recalled that (1) a payee's recovery from a bank guilty of honoring a forged endorsement is really a matter of strict liability

ception in that respect. Thus, the analysis is facilitated by a brief look at the few cases addressing the issue outside of Illinois, followed by an examination of Illinois' application of those principles.

### Development of Ratification Theory

It appears the first case to address the ratification theory was *United States Portland Cement Co. v. United States National Bank of Denver,* 61 Colo. 334, 157 P. 202 (1916), which involved a forgery situation identical to that here. *Portland Cement,* 157 P. at 204 upheld the payee's right to sue its collecting bank for conversion and explained the consequences to the drawee bank (equivalent to Northern here):

> [T]he plaintiff seeks, as we think he has the right to do, to ratify the collection of the check for him; in such case he ratifies the assumed payment of it, and the check is then paid; the drawee bank and the maker thereof are both released from paying it once again; the payee would be estopped from making such claim.

That decision was later approved in *Denver Electric and Neon Service Corp. v. Gerald H. Phipps, Inc.,* 143 Colo. 530, 354 P.2d 618 (Colo.1960) (en banc), which held a payee estopped from suing a *drawer.*[6]

In 1973 *Cooper* (an en banc decision of the California Supreme Court) adopted the *Portland Cement* rationale—again in a factual scenario identical to the present one. It would lengthen this opinion unduly to quote the relevant language from *Cooper.* Suffice it to say it might well have been written as a legal memorandum for Northern here.[7]

Finally in terms of case law, although the litigants have not cited to any federal cases, this Court has uncovered two federal

opinions supporting the ratification theory. Dicta in *Atlanta & St. A.B. Ry. Co. v. Barnes,* 96 F.2d 18, 19 (5th Cir.1938) and *Commonwealth Federal Savings & Loan Association v. First National Bank of New Jersey,* 513 F.Supp. 296, 305 (E.D.Pa. 1979) espouse the same principles as the square holdings exemplified by *Cooper.*[8]

Not surprisingly, the literature in the field supports the ratification theory as well. See, for example, 4 Hawkins, *Uniform Commercial Code Series* § 3–419:05, at 805 (1984); Note, *Payee v. Depository Bank: What is the UCC Defense to Handling Checks Bearing Forged Indorsements?,* 45 U.Colo.L.Rev. 281, 301 (1973); and cf. 6 Anderson, *Uniform Commercial Code* § 3–419:53 (1984) (referring to, but expressing no opinion as to, California authority stating the theory).

### Illinois Law

██ That general acceptance of the ratification theory (though low in volume) serves as a general backdrop to the critical inquiry into Illinois law. Neither the litigants nor this Court have or has located any post-UCC Illinois case addressing the issue, but one pre-UCC case is directly on point.

*Independent Oil Men's Association v. Fort Dearborn National Bank,* 311 Ill. 278, 142 N.E. 458 (1924) directly addressed the ratification theory in a context identical to the present one. Upon discovering its employee's forgeries, the payee (like P.M. F. here) sued the collecting bank (comparable to Mount Greenwood here). With its language modified to reflect the players in this case, *Independent Oil, id.* at 281, 142 N.E. at 459 (citations omitted) said:

---

and (2) banks are normally very solvent targets for recovery. Under those circumstances the payee has little incentive to go after *two* deep pockets—the payor bank and the collecting bank. And it is only in that context that the ratification doctrine at issue here arises.

**6.** See also *Central, Inc. v. Cache National Bank,* 748 P.2d 351, 355 (Colo.App.1987) ("The purpose of [the ratification] theory, generally, is to require the payee to make an election between suing the drawee bank or the collecting bank.").

**7.** For an additional California opinion, see also *Navrides v. Zurich Insurance Co.,* 5 Cal.3d 698, 97 Cal.Rptr. 309, 488 P.2d 637, 641 n. 5 (Cal. 1971) (en banc). Ratification was also the theory espoused in a dissent by Utah Supreme Court Justice Callister in *Pacific Metals Co. v. Tracy-Collins Bank and Trust Co.,* 21 Utah 2d 400, 446 P.2d 303, 306–07 (1968).

**8.** *Commonwealth Federal* cited *Cooper* in support of its discussion.

Defendant in error [P.M.F.] might have brought an action of trover against plaintiff in error [Mount Greenwood] for unlawful conversion of property, but it chose to waive the tort and to bring its action in assumpsit for money had and received for its use. That it had a right to do this is well established by the great weight of authority.... Defendant in error [P.M.F.] ratifies the collection of the check for it, and by this act ratifies the assumed payment of the check. Both the drawer [Niedert] and the drawee of the check [Northern] are released from paying it over again, because the payee [P.M.F.], by ratifying the payment, is estopped from making a claim against either.

Thus *Independent Oil* adopted the ratification theory, citing *Portland Cement* for support of its proposition. And age has not withered it,[9] for the Illinois Code Comment to Section 3–419(1)(c) specifically indicates that:

This paragraph codifies prior Illinois cases ... *Independent Oil Men's Ass'n v. Fort Dearborn Nat'l Bank*, 311 Ill. 278, 142 N.E. 458 (1924).

Unquestionably *Independent Oil* remains good law in the current UCC regime.

P.M.F. Mem. 4 argues that *Cooper* "is not the law in Illinois with respect to ratification and Illinois Courts have not adopted its rule." It cites *Kaszab v. Metropolitan State Bank*, 264 Ill.App. 358 (1st Dist.1932) for the proposition that its suit against Mount Greenwood must be prosecuted *to a final conclusion* before estoppel is applicable. But *Kaszab* dealt with a situation in which the payee *had* pursued the collecting bank to a "final conclusion" (*id.* at 368), albeit successfully. Thus the court held such conduct was a *sufficient* condition to raise an estoppel on an "election of remedies" theory—but it was not called upon to decide whether a "final conclusion" in the suit against the collecting

bank was a *necessary* condition. Moreover, *Kaszab* quoted from *Independent Oil* the very language quoted earlier in this opinion (including the Illinois Supreme Court's reliance on *Portland Cement*).

This Court adheres, as counseled by the *Erie* doctrine and the reaffirmed viability of *Independent Oil*, to the teaching of that case. And that teaching is that P.M.F.'s very institution of its lawsuit against Mount Greenwood in this case is the ratification that frees Northern from liability.[10]

Finally, P.M.F. Mem. 2–3 argues that the ratification theory cannot apply because P.M.F. disclaimed it in its pleadings. Complaint ¶ 32 (asserted only against Mount Greenwood, not against Northern) states:

The "proceeds" as defined by the Court in *Cooper v. Union Bank*, 9 Cal.3d 371, 107 Cal.Rptr. 1, 507 P.2d 609 (1973), from these checks remain in the hands of Mount Greenwood Bank except for the checks paid by The Northern Trust.

P.M.F.'s contention is flawed and cannot change the result here.

Complaint ¶ 32 asserts only a legal conclusion. And of course "[a] plaintiff cannot merely plead legal conclusions (even in federal court)" (*Ghouth v. Conticommodity Services, Inc.*, 642 F.Supp. 1325, 1328 (N.D.Ill.1986). P.M.F. cannot "wish it so" by pleading that it does not want the law to apply to it. Its Count III claim against Mount Greenwood (1) incorporates all the relevant allegations against Grady, (2) charges that Mount Greenwood wrongfully allowed Grady to withdraw the funds "even though *all the checks* deposited in the account were rightfully owned by and made payable to P.M.F." (Complaint ¶ 30) and (3) seeks damages in conversion from Mount Greenwood for precisely the same amount sought from Grady in the Complaint's earlier counts. That spells rat-

---

**9.** With apologies to Shakespeare, *Antony and Cleopatra* act 2, scene 1, line 243.

**10.** That reading is called for not only by the specific language of the *Independent Oil* opinion but by its approving citation to *Portland Cement*

—a case that has been consistently interpreted (see, e.g., *Cooper* and Note, 45 U.Colo.L.Rev. at 301) as standing for the proposition that *bringing suit* constitutes ratification.

ification under the cases, and P.M.F.'s final argument is without merit.[11]

In sum, Illinois has adopted the ratification theory via *Independent Oil* and the adoption of its rationale by Section 3–419(1)(c). P.M.F.'s suit against Mount Greenwood therefore constitutes ratification of the collection of the proceeds of the 13 Niedert checks from Northern, in turn estopping P.M.F. from suing Northern for conversion under Section 3–419(1)(c).

### Rule 54(b)

 All that remains is to determine whether the order granting Northern's motion should be made final under Rule 54(b). Such an order, which disposes finally of all claims against one party to a suit, would be a proper candidate for a Rule 54(b) determination even if identical claims were to remain pending between the remaining parties (*National Metalcrafters v. McNeil*, 784 F.2d 817, 821 (7th Cir.1986). Thus the present situation, which involves a pure question of law unique to Northern, should follow a fortiori from that proposition. Northern is entitled to the certainty of finality now, rather than its being held hostage until the conclusion of P.M.F.'s suit against Mount Greenwood and Grady (or even against Mount Greenwood alone).

### Conclusion

P.M.F. has failed to demonstrate any genuine issue of material fact requiring trial, and Northern is entitled to a judgment as a matter of law. Count IV of the Amended Complaint is dismissed with prejudice and Northern is dismissed as a defendant. In accordance with Rule 54(b), this Court expressly determines there is no just reason for delay and expressly directs the entry of final judgment in favor of Northern and against P.M.F.

---

**11.** P.M.F. Mem. 2 also urges the defense of ratification involves questions of fact (citing to *Johnson v. North Bank,* 99 Ill.App.3d 320, 55 Ill.Dec. 220, 426 N.E.2d 4 (1st Dist.1981)). *Johnson* does indeed stand for the proposition that the payee's ratification of the *forgery* involves factual inquiries. But the issue here is ratification of the *collection of the proceeds by Mount Greenwood,* not ratification of the forgery by P.M.F. As *Cooper,* 107 Cal.Rptr. at 6, 507 P.2d at 614 makes clear:

> Ratification of collection, however, does not constitute a ratification of the collecting banks' delivery of the proceeds to the wrong person. Thus P.M.F. can properly be held, as a matter of law, to have ratified the collection without disturbing the factual inquiry into P.M.F.'s ratification of the forgery.